Filed 12/19/22  Remsen v. Shaffer CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LAWRENCE REMSEN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JENNIFER SHAFFER, as Executive Officer, etc., et al., <br><br> Defendants and Respondents. | B314858 <br><br> (Los Angeles County <br> Super. Ct. No. 19STCP00010) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Lawrence Remsen, in pro. per. for Plaintiff and Appellant.

Alicia Marie Richards, in pro. per. for Plaintiff and Appellant.

Rob Bonta, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Maria G. Chan and Charles Chung, Deputy Attorney General for Defendants and Respondents.

_____

Lawrence Remsen (Remsen), his daughter Alicia Marie Richards, and his son Gregory Remsen filed a petition for writ of mandate in the superior court challenging the indeterminate sentence and continuing imprisonment of Remsen for his 1983 conviction for murder.[1] Remsen and Richards (collectively, plaintiffs) named as defendants: Xavier Becerra, as Attorney General, Ralph M. Diaz, as Secretary of the California Department of Corrections and Rehabilitation (CDCR), Jennifer Shaffer, as Executive Officer of the Board of Prison Hearings (the Board), and Gavin Newsom, as Governor of the State of California.[2] The trial court sustained the defendants' demurrer without leave to amend and entered a judgment of dismissal. Plaintiffs appealed. For the reasons given below, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In 1983, a court found Remsen guilty of one count of murder in the second degree (Pen. Code, § 187)[3] six counts of

---

[1] Remsen's son Gregory Remsen was also a plaintiff below. According to the appellants' opening brief, Gregory Remsen died in September 2021.

[2] The judgment was entered on June 14, 2021, and in favor of the defendants in their official capacities. By that date, Rob Bonta had succeeded Xavier Becerra as Attorney General and Kathleen Allison had succeeded Ralph M. Diaz as Secretary of the CDCR. They are therefore substituted in as the defendants/respondents in this appeal in place of their predecessors. (See *Bacilio v. City of Los Angeles* (2018) 28 Cal.App.5th 717, 722, fn. 3; *Wightman v. Franchise Tax Board* (1988) 202 Cal.App.3d 966, 969, fn. 2.)

[3] Subsequent unspecified statutory references are to the Penal Code.

forgery (former § 470), three counts of attempted grand theft (former § 487, subd. 1, § 664), one count of grand theft (former § 487, subd. 1), and one count of grand theft auto (former § 487, subd. 3). The court sentenced Remsen to prison for a term of 15 years to life on the murder conviction. (§ 190.) The indeterminate term was to run consecutively to a determinate term of six years imposed on four of the forgery convictions. The determinate term was subsequently corrected and reduced to five years. Remsen remains incarcerated.

Between June 2002 and July 2015, Remsen filed at least six petitions for a writ of habeas corpus in various California state courts, each of which was denied.

On April 22, 2019, the plaintiffs, each acting in propria persona, filed an amended petition for writ of mandate in the superior court. The plaintiffs alleged three "grounds," or, as the trial court and we describe them, causes of actions. Under the first cause of action, plaintiffs allege that the Board does not have jurisdiction to hold parole suitability hearings over persons serving terms other than " 'straight life' " terms.[4] (Capitalization omitted.) According to plaintiffs, Remsen's prison "term was fixed for June 9, 1994," and "has long since expired"; he is, therefore, entitled to "immediate discharge without parole."

---

[4] Plaintiffs do not indicate their understanding of the phrase, "straight life." Our Supreme Court has used that phrase to describe terms of life with the possibility of parole pursuant to a statute that does not specify a minimum term. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1079, fn. 6 (*Dannenberg*).) A person sentenced to a straight life term is eligible for parole after seven years. (§ 3046, subd. (a)(1).)

Under the second cause of action, plaintiffs alleged that during Remsen's sentencing hearing he "was told he would serve between 7 to 10 years[,] but no more than 15 years for [his] convictions." With good behavior and participation credits, therefore, "his contractually earned parole release date was fixed for April 12, 1993."

Under the third cause of action, plaintiffs alleged that the act that established the indeterminate term for second degree murder—Proposition 7, as approved by voters, General Election (Nov. 7, 1978) (Proposition 7)—is unconstitutional. The court should, therefore, declare Proposition 7 void and order "Remsen's immediate discharge without parole."

Defendants demurred to the petition on the grounds, among others, that the petition fails to state a cause of action, Remsen's claims are barred by collateral estoppel because the claims had previously been decided against him in his habeas proceedings, and that the plaintiffs lack standing to assert the claims.

On November 3, 2020, the court sustained the demurrer as to each cause of action. As to standing, the court found that Remsen has standing as an "imprisoned person" with respect to his contentions that the defendants have ministerial duties that could result in his release from prison. The other plaintiffs, however, failed to adequately allege facts to support "taxpayer standing" or standing under "citizen standing" or public interest standing principles.

The court stated that Remsen's claims were barred by the doctrine of collateral estoppel because he had "raised these identical claims in his habeas petitions," which had been "actually litigated and decided on the merits by the habeas

4

courts." In addition, Remsen's contract claim was barred by the two-year statute of limitations for oral contracts.

On the merits, the court determined that the plaintiffs' contention that the Board lacks the authority to hold parole hearings for Remsen and similarly situated inmates fails as a matter of law. Persons convicted of murder are sentenced to indeterminate terms, the court explained, and the Board therefore has the statutory authority to determine whether to grant parole. The plaintiffs' contract claim failed because the facts alleged to support the existence of a contract failed to establish a "binding contract" or "any ministerial duty related to the alleged contract." Lastly, the court rejected the plaintiffs' challenge to Proposition 7 because it was enacted through a constitutionally authorized initiative process.

The court denied plaintiffs leave to amend because they failed to show "a reasonable possibility the legal defects could be cured" and noted that Remsen "has pursued these same legal theories numerous times in his habeas petitions[,] which have all been denied."

On June 14, 2021, the court entered a judgment of dismissal. Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### A. *Standards of Review*

We review an order sustaining a demurrer de novo to determine whether the pleading alleges facts sufficient to state a cause of action under any legal theory. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) In analyzing the pleading, we assume the truth of the well-pleaded material facts, but not contentions, deductions or conclusions of fact or law. (*Centinela Freeman*

5

*Emergency Medical Associates v. Health Net of California, Inc.*
(2016) 1 Cal.5th 994, 1010; *Blank v. Kirwan* (1985) 39 Cal.3d 311,
318.) We review the denial of leave to amend a pleading after
the sustaining of a demurer for an abuse of discretion. (*Aubry v.
Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970–971; *City of
Torrance v. Southern California Edison Company* (2021) 61
Cal.App.5th 1071, 1091.)

### B. *First Cause of Action*

In support of their first cause of action, plaintiffs
contend that the defendants have a duty "to perform under the
[determinate sentencing law] rather than the [indeterminate
sentencing law]" and to "release inmates pursuant to their good
time credits." The claim is without merit.

When Remsen committed murder in 1981 and when he
was sentenced in 1983, the punishment for second degree murder
was an indeterminate term of 15 years to life. (§ 190; Prop. 7,
*supra*, § 2.) For such a sentence, the sentencing court "shall not
fix the term or duration of the period of imprisonment." (§ 1168,
subd. (b).) Instead, the Board determines when an indeterminate
term of incarceration ends. (*In re Butler* (2018) 4 Cal.5th 728,
733; *In re Monigold* (1983) 139 Cal.App.3d 485, 491 (*Monigold*);
§ 3040 et seq.) Because Remsen was sentenced to an
indeterminate term, defendants have no duty to "perform under
the [determinate sentencing law]." Plaintiffs' claim therefore
fails as a matter of law.

### C. *Second Cause of Action*

The plaintiffs' second cause of action is premised on
an alleged contract made at Remsen's sentencing hearing. The
plaintiffs rely on a one-page excerpt of a reporter's transcript of

6

what is purportedly Remsen's sentencing hearing. In the excerpt, an unidentified person states: "Your Honor, . . . 15 to life would be appropriate. If the State will have gotten what it needs to let other people know you cannot commit this type of crime. The community certainly would have been protected because he will be out of society's reach for several years, 10, 15 years, whatever the case may be. And that will be more than enough. [¶] When I say 10 or 15, I mean seven to ten incarcerated, actual incarceration, before he would be eligible for parole. [¶] That doesn't mean he's going to get out, even though those are the dates. If he's not rehabilitated, I'm sure they can revoke it, or if they'd rather keep him in for an addition of time up to the 15 years, they can."

Nothing in this excerpt establishes a contract binding the CDCR or any of the defendants to release Remsen after any particular period of time. The contract claim is without merit.

Appellants also rely on section 2931 and assert that this statute supersedes the authority of the Board under section 3040 et seq. Section 2931, they assert, is the "implementing mechanism to fix [an inmate's] parole release date." We disagree.

Section 2931 provides the CDCR with authority to reduce prescribed prison terms "for good behavior and participation." (§ 2931, subd. (a).) According to its terms, it applies only to determinate sentences. (*Ibid.*; see *Monigold*, *supra*, 139 Cal.App.3d at p. 490 [section 2931 provides for conduct credits for "those prisoners who receive a determinate sentence"].) At the time Remsen committed his crimes, however, section 190 provided that the part of the Penal Code that includes section 2931 "shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to . . . section [190],

7

but such person shall not otherwise be released on parole prior to such time." (Prop. 7, *supra*, § 2.) Thus, Remsen's "minimum term" for murder could be reduced pursuant to section 2931. (See 70 Ops.Cal.Atty.Gen. 49, 56 (1987) [prisoners serving a second degree murder term of 15 years to life are "eligible for good behavior and participation credits pursuant to [section 2931] to reduce the minimum terms of such sentences"].) Any reduction in the minimum term, however, would merely make Remsen eligible for parole earlier than he would have in the absence of the reduction. Nothing in section 190, section 2931, or any other authority to which plaintiffs refer us, suggests that section 2931 "supersedes" or impacts the authority of the Board to determine whether an inmate shall be released on parole after the minimum term has been served.[5] Plaintiffs' second cause of action therefore fails to state a claim upon which relief can be granted, and the defendants' demurrer on that ground was properly sustained.

## D. *Third Cause of Action*

According to the plaintiffs, their third cause of action sought a declaration that Proposition 7 is "void on its face." (Capitalization omitted.) We disagree.

---

[5] In 1996, the Legislature amended section 190 to omit the provision for reduction of the minimum term through application of good time and participation credits. (Stats. 1996, ch. 1231, § 1.) Section 190, subdivision (e) currently provides: "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not apply to reduce any minimum term of a sentence imposed pursuant to this section. A person sentenced pursuant to this section shall not be released on parole prior to serving the minimum term of confinement prescribed by this section."

Proposition 7 amended section 190 and other statutes to provide, among other things, for increased penalties for murder. (Prop. 7, *supra*, § 2.)  Specifically, it increased the minimum term for first degree murder to 25 years and changed the penalty for second degree murder from a determinate term of either five, six, or seven years, to an indeterminate term of 15 years to life. (Prop. 7, *supra*, §§ 1, 2; *People v. Cooper* (2002) 27 Cal.4th 38, 41−42.)

In evaluating the constitutionality of an initiative statute, we indulge all presumptions and intendments in favor of the statute's validity.  (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 814.)  We will uphold the statute unless its " ' "unconstitutionality clearly, positively, and unmistakably appears." [Citations.]  If the validity of the measure is "fairly debatable," it must be sustained.  [Citations.]' " (*Briggs v. Brown* (2017) 3 Cal.5th 808, 828.)

Plaintiffs assert that Proposition 7 "was an improper exercise of . . . legislative powers" that "reenacted the abolished indeterminate sentencing scheme," which the Legislature had rejected.  (Capitalization omitted.)  The proposition, however, was enacted by the electorate pursuant to the constitutionally authorized initiative process.  (*In re Dannenberg*, *supra*, 34 Cal.4th at p. 1079, fn. 6; *People v. Solis* (2020) 46 Cal.App.5th 762, 772; see Cal. Const., art. II, § 8.)  It was thus not an exercise of legislative power at all.  And, even if the initiative could be characterized as reenacting an indeterminate sentencing scheme previously abolished by the Legislature, plaintiffs have not explained why voters could not do so.

Plaintiffs also argue that the initiative should be invalidated because a particular state senator used the initiative

for his "own personal means of trying to change our sentencing laws without submitting the subject to the voters" (underlining omitted), and that we "cannot have the same branch of government [that] is prosecuting a person deciding punishment for crime." These undeveloped arguments lack coherence or apposite supporting authority. Plaintiffs have, in short, failed to show " ' "clearly, positively, and unmistakably" ' " that Proposition 7 is unconstitutional. (*Briggs v. Brown, supra,* 3 Cal.5th at p. 828.) The demurrer to the third cause of action, therefore, was properly sustained.[6]

### E.     *Denial of Leave to Amend*

Plaintiffs contend that the court erred in denying leave to amend. They devote their entire argument on this point to explaining how Richards can amend the petition to allege facts showing that she has standing to assert her claims. They do not assert or suggest that, even if Richards can establish standing, they can overcome the legal insufficiency of the causes of action. There was therefore no error in denying leave to amend.

---

[6] Because we conclude that the plaintiffs have failed to state any cause of action on the merits, we do not reach the other grounds for demurrer the respondents asserted.

## DISPOSITION

The judgment is affirmed.

Defendants and respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.

11